1

2

3

4

5

6

7

8

9

10

11

12

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

13  REX CHAPPELL,                        )          CV F- 96-5576 AWI DLB P
                                         )
14                    Plaintiff,         )          FINDINGS AND
                                         )          RECOMMENDATIONS RE
15        v.                             )          DEFENDANT'S MOTION FOR
                                         )          SUMMARY JUDGMENT
16  C/O DICKERSON,                       )          (DOC 99)
                                         )
17                    Defendant.         )
    _____ )

18

19

20  A.    <u>Procedural History</u>

21        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action

22  pursuant to 42 U.S.C. section 1983.  This action is proceeding on plaintiff's amended complaint filed

23  August 5, 1996, involving allegations that defendant Dickerson was deliberately indifferent to

24  plaintiff's safety and retaliated against plaintiff by encouraging other inmates to attack plaintiff at

25  Corcoran State Prison.

26        The District Court dismissed this action by order filed October 22, 1998, for failure to file an

27  amended complaint.  The Court had previously dismissed the complaint because plaintiff failed to

28  allege physical injury, as required by section 1997e(e) of the Prison Litigation Reform Act (PLRA).

1   Plaintiff was granted leave to amend the complaint, but failed to do so, occasioning the ultimate

2   dismissal of the action.  (District Court's Order of October 22, 1998).  Plaintiff appealed the

3   dismissal to the Court of Appeals for the Ninth Circuit.  In an unpublished memorandum opinion

4   filed on October 31, 2000, the Court of Appeals reversed the decision of the District Court.  The

5   Court of Appeals determined that the dismissal of the original complaint was erroneous because

6   "application of the PLRA to Chappell's claim creates an impermissible retroactive effect because it

7   'attaches new legal consequences to events completed before its enactment.'"  Amended

8   Memorandum Opinion of Court of Appeals, at p. 2, quoting <u>Martin v. Hadix</u>, 527 U.S. 343, 343-57

9   (1992).  The Court of Appeals concluded: "we find Chappell made out a pre-PLRA claim for

10  psychological injury under § 1983.  His complaint should not have been dismissed."  Amended

11  Memorandum Opinion, at p. 3.  The District Court's dismissal order was reversed and the action was

12  remanded to the District Court.

13          By order filed November 8, 2000, District Judge Ishii referred this action to the undersigned

14  Magistrate Judge for further proceedings.  By order filed January 24, 2001, the Court directed the

15  United States Marshals to serve defendant Dickerson with this action.  After obtaining an

16  enlargement of time to file a responsive pleading, defendant filed a motion to dismiss arguing that

17  plaintiff failed to exhaust all available administrative remedies prior to filing this action and that the

18  action must be dismissed pursuant to the PLRA's exhaustion requirement of 42 U.S.C. § 1997e(a).

19  The undersigned recommended that the motion to dismiss, which the District Court adopted.

20          On July 28, 2006, defendant filed the instant motion to dismiss.  Plaintiff filed an opposition

21  on August 17, 2006 and defendant filed a reply on August 24, 2006.

22  B.      <u>Summary Judgment Standard</u>

23          Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

24  as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R.

25  Civ. P. 56(c).  Under summary judgment practice, the moving party

26          [A]lways bears the initial responsibility of informing the district court
            of the basis for its motion, and identifying those portions of "the
27          pleadings, depositions, answers to interrogatories, and admissions on

28

file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It is the moving party's burden to establish that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978).

As to defendant's motion for summary judgment, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d

1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

C.      Statement of Undisputed Facts

1.      On April 7, 1996, plaintiff was standing at his cell door, waiting to be released for yard. Compl. ¶ 5.

2.      Officer Dickerson, who was a control booth officer, initially did not let plaintiff out of his cell.  .  Compl. ¶ 4-5.

3.      When plaintiff asked what was happening with his yard, Officer Dickerson stated on the

1   loudspeaker that plaintiff had "nothing coming" because plaintiff had masturbated while a

2   female officer, Officer Lopez had been in the gun control booth and that Officer Lopez was

3   Dickerson's friend.  Compl. ¶ 5; Plaintiff's Depo. 93:16-20.

4   4.   About fifteen minutes later, Officer Dickerson opened Plaintiff's cell door and told him to

5        come out.  Compl. ¶ 7.

6   5.   At this time, Officer Dickerson again accused plaintiff of masturbating in the presence of a

7        female officer and in response, plaintiff explained that he had covered his back window with

8        a towel so that the only way Officer Lopez could have seen him was if she had made an effort

9        to peer into his cell.  Compl. ¶ 7.

10  6.   Plaintiff and Officer Dickerson exchanged words and while plaintiff was "verbally

11       correcting" Officer Dickerson "for stepping out of bounds," Dickerson slammed to the

12       window of the gun control booth window.  Compl. ¶ 8; Plaintiff's Depo. 94:19-22.

13  7.   Officer Dickerson then let plaintiff out onto the yard, at which time Dickerson told other

14       inmates on the yard that they would not receive any handballs, or hair or fingernail clippers,

15       because plaintiff had disrespected one of his officers and that they were free to "beat

16       [plaintiff's] ass." .  Compl. ¶ 9; Plaintiff's Depo. 94:23-95:9.

17  8.   Plaintiff was on the yard with about eight other inmates with whom plaintiff was not familiar

18       and who plaintiff did not know.  Plaintiff's Depo 95:11-16.

19  9.   One of the inmates on the yard told plaintiff that they were not going to harm him, and

20       nothing further happened to plaintiff.  Compl. ¶ 10-11; Plaintiff's Depo 95:22-96:15.

21  10.  During this incident, plaintiff experienced "fear for [his] life that day."  Compl. ¶ 11.

22       D.   Discussion

23       1.   Eighth Amendment Claim

24       In his amended complaint, plaintiff alleges that on April 7, 1996, Officer Dickerson

25  attempted to take away his yard time due to "disrespecting" a female officer.  Plaintiff alleges that

26  Officer Dickerson "placed plaintiff in jeopardy by telling the whole building what he thought

27  plaintiff had done and then told all of the building that plaintiff is a dingy mother fucker on

28

1   psychotropic medication."  Plaintiff further alleges that when placing plaintiff on the yard, Officer

2   Dickerson told all of the inmates that plaintiff was disrespected female staff and that consequently

3   there wouldn't be any handballs, fingernail clipper's, hairclippers and that they had plaintiff to thank

4   for the lack of these items.  Plaintiff alleges that Officer Dickerson also told the inmates that if they

5   wanted to "kick his ass," nobody in the gun control booth would see it.  Plaintiff alleges that he was

6   then left in danger and fear for his life.

7       To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

8   conditions must involve "the wanton and unnecessary infliction of pain . . . ."  Rhodes v. Chapman,

9   452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh, prison officials

10  must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Id.;

11  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246

12  (9th Cir. 1982).  Where a prisoner alleges injuries stemming from unsafe conditions of confinement,

13  prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk

14  of serious harm."  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

15      The deliberate indifference standard involves an objective and a subjective prong.  First, the

16  alleged deprivation must be, in objective terms, "sufficiently serious . . . ."  Farmer v. Brennan, 511

17  U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official

18  must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ."  Farmer, 511 U.S.

19  at 837.  Thus, a prison official may be held liable under the Eighth Amendment for denying humane

20  conditions of confinement only if he knows that inmates face a substantial risk of harm and

21  disregards that risk by failing to take reasonable measures to abate it.  Id. at 837-45.  Prison officials

22  may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting

23  evidence of a reasonable, albeit unsuccessful, response to the risk.  Id. at 844-45.  Mere negligence

24  on the part of the prison official is not sufficient to establish liability, but rather, the official's

25  conduct must have been wanton.  Id. at 835; Frost, 152 F.3d at 1128.

26      Defendant argues that he is entitled to judgment as a matter of law because plaintiff cannot

27  show that he suffered any objectively serious harm in violation of the Eighth Amendment and in fact

28

1     plaintiff received no injuries whatsoever.

2        The Court rejects defendant's argument.  The "[plaintiff] need not show that the [defendant]

3     acted or failed to act believing that harm actually would befall the inmate; it is enough that the

4     [defendant] acted or failed to act despite his knowledge of a substantial risk of harm."  Id. At 842.

5     Further, the defendant may not

6          escape liability for deliberate indifference by showing that, while he was aware of the
obvious, substantial risk to inmate safety, he did not know the complainant was
7          especially likely to be assaulted by the specific prisoner who eventually committed
the assault.  The question under the Eighth Amendment is whether [the defendant],
8          acting with deliberate indifference, exposed [the plaintiff] to a sufficiently substantial
risk of serious damage to his future health and it does not matter whether the risk
9          comes from a single source or multiple sources, any more than it matters whether a
prisoner faces an excessive risk of attack for reasons personal to him or because all
10         prisoners in his situation face such a risk.

11     Id. at 843 (internal quotations and citation omitted).  The fact that the alleged risk to plaintiff's safety

12     never came to fruition is not dispositive, as the Eighth Amendment does not require that harm

13     actually befall the inmate, Farmer, 511 U.S. at 845.

14        For purposes of this motion, defendant admits that he told the other inmates on the yard that

15     they would not receive any handballs, hair or fingernail clippers because plaintiff had disrespected

16     one of his officers and that they were free to "beat [plaintiff's] ass."  That the other inmates did not

17     act on Defendant's suggestion does not shield defendant from liability under the Eighth Amendment.

18     Indeed, the Ninth Circuit has already held that applying pre-PLRA law, a prisoner's claim for

19     psychological injury is cognizable under section 1983.

20        The Court also rejects defendant's argument that he is entitled to qualified immunity.

21     Government officials enjoy qualified immunity from civil damages unless their conduct violates

22     "clearly established statutory or constitutional rights of which a reasonable person would have

23     known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity protects "all but the

24     plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341

25     (1986).  In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the

26     light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct

27     violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If, and only if, a violation

28

1   can be made out, the next step is to ask whether the right was clearly established.  Id.  The inquiry

2   "must be undertaken in light of the specific context of the case, not as a broad general proposition . .

3   . ."  Saucier v. Katz, 533 U.S. 194, 201 (2002).  "[T]he right the official is alleged to have violated

4   must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The

5   contours of the right must be sufficiently clear that a reasonable official would understand that what

6   he is doing violates that right."  Saucier, 533 U.S. at 202 (citation omitted).  In resolving these

7   issues, the court must view the evidence in the light most favorable to plaintiff and resolve all

8   material factual disputes in favor of plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir.

9   2003).

10      As set forth in the preceding section and viewing the allegations in the light most favorable to

11  plaintiff, the allegations are sufficient to show that defendant's alleged conduct violated the Eighth

12  Amendment.  The first prong of the qualified immunity inquiry set forth in Saucier has therefore

13  been met.  Saucier, 533 U.S. at 201.

14      Turning to the second prong, the court must determine whether the right was clearly

15  established.  Id.  Here, it was clearly established in 1996 that a prison official may be held liable if

16  they acted with "deliberate indifference to a substantial risk of serious harm."  Frost v. Agnos, 152

17  F.3d 1124, 1128 (9th Cir. 1998).  The alleged conduct in informaing other inmates that they could

18  assault plaintiff, if true, constitutes deliberate indifference to plaintiff's safety.  Qualified immunity

19  protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs,

20  475 U.S. 335, 341 (1986).  Viewing the evidence in the light most favorable to plaintiff, the contours

21  of plaintiff's rights under the Eighth Amendment were sufficiently clear that a reasonable officer

22  would understand that his or her actions were unlawful in the situation confronted.  Saucier, 533

23  U.S. at 202.  Accordingly, Defendant is not entitled to judgment as a matter of law based on

24  qualified immunity.

25      2.      Retaliation Claim

26      Plaintiff claims that Officer Dickerson took the actions complained of in retaliation for

27  "disrespecting" an officer.  Plaintiff also claims that defendant refused to take his CDC 602 Citizens

28

1    Complaint due to plaintiff's disrespecting an officer.  Plaintiff's Opposition at p. 8.  Defendant

2    argues that the act of masturbation is not a constitutionally protected right, and therefore any adverse

3    action taken in response to such non-protected conduct does not amount to a constitutional violation

4    for retaliation.

5         An allegation of retaliation against a prisoner's First Amendment right to file a prison

6    grievance is sufficient to support claim under Section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th

7    Cir.2003).  "Within the prison context, a viable claim of First Amendment retaliation entails five

8    basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2)

9    because of (3) that prisoner's protected conduct, and that such action  (4) chilled the inmate's

10   exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

11   correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).   The court must "

12   'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered

13   legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802,

14   807 (9th Cir.1995) (*quoting* Sandin v. Conner, 515 U.S. 472, 482, 115 S.Ct. 2293  (1995)).  The

15   burden is on plaintiff to demonstrate "that there were no legitimate correctional purposes motivating

16   the actions he complains of." Pratt, 65 F.3d at 808.

17        For purposes of this motion, defendant admits that he let plaintiff out onto the yard, at which

18   time he told other inmates on the yard that they would not receive any handballs, or hair or fingernail

19   clippers, because plaintiff had disrespected one of his officers and that they were free to "beat

20   [plaintiff's] ass."  Plaintiff claims that prior to letting him out on the yard, Officer Dickerson also

21   refused to process his CDC 602 because he felt that plaintiff had disrespected another officer.  These

22   allegations are sufficient to state a claim for retaliation.  Defendant presents no evidence on these

23   claims and therefore has not met his burden as the party moving for summary judgment on this

24   claim.

25        As to plaintiff's contentions that his Due Process rights were violated, plaintiff alleges,

26   without elaboration, that defendants' actions also violated the Due Process Clause.  However, "[t]o

27   establish a violation of substantive due process . . . , a plaintiff is ordinarily required to prove that a

28

challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.  Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims."  Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), cert. denied, 117 S. Ct. 1845 (1997); County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998).

In this case, the Eighth Amendment "provides [the] explicit textual source of constitutional protection . . . ."  Patel, 103 F.3d at 874.  Therefore, the Eighth Amendment rather than the Due Process Clause of the Fourteenth Amendment governs plaintiff's claims.

V.    Conclusion

Based on the foregoing, the court finds that defendants are entitled to judgment as a matter of law on plaintiff's due process claim, but defendant's motion for summary judgment must be denied in all other respects.  Therefore, it is HEREBY RECOMMENDED that:

1.    Plaintiff's motion for summary judgment, July 28, 2006, be DENIED PART and GRANTED IN PART as follows:

a.    Defendant's motion for summary judgment on plaintiff's Eighth Amendment Claim be DENIED;

b.    Defendant's motion for summary judgment on plaintiff's retaliation claim be DENIED;

c.    Defendant's motion for summary judgment on plaintiff due process claim be GRANTED; and

2.    This action should proceed to trial on plaintiff's Eighth Amendment and Retaliation claims.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **twenty (20) days** after being served with these Findings and Recommendations, the parties may file written

1   objections with the court.  The document should be captioned "Objections to Magistrate Judge's

2   Findings and Recommendations."  The parties are advised that failure to file objections within the

3   specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d

4   1153 (9th Cir. 1991).

5          IT IS SO ORDERED.

6      **Dated:   December 8, 2006**          <u>      /s/ **Dennis L. Beck**     </u>
    3b142a                                    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

U.S. District Court
E. D. California